# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JERRY ERVIN GARRETT,**

> **Plaintiff,**

**v.**                                                          **Case No:   6:16-cv-1516-Orl-41GJK**

**COMMISSIONER OF SOCIAL
SECURITY,**

> **Defendant.**

# REPORT AND RECOMMENDATION

Jerry Garrett (the "Claimant") appeals to the District Court a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Doc. No. 1. Claimant argues that the Administrative Law Judge (the "ALJ") erred by: 1) not weighing a psychological evaluation from a consulting physician; and 2) failing to develop the record by not reviewing Claimant's prior DIB file. Doc. No. 17 at 6-7, 9-11. Claimant requests that the Commissioner's decision be reversed and remanded for further proceedings. *Id.* at 14. For the reasons set forth below, it is **RECOMMENDED** that the Commissioner's final decision be **REVERSED** and **REMANDED** for further proceedings.

## I.     FACTUAL BACKGROUND

In January 1, 1989, Claimant started receiving DIB. Doc. No. 17 at 10, 11; R. 188. Claimant's DIB ended in January 2010. *Id.* In May 2010, Claimant filed another application for DIB, which was denied initially in October 2010. Doc. No. 17 at 11 n.2. On January 4, 2011, Claimant's May 2010 DIB application was denied upon reconsideration. Doc. No. 17 at 11; R.

188. Rather than appealing the denial with a request for hearing, Claimant filed the applications at issue in this case.

The case centers on two applications for DIB and SSI filed on October 1, 2012. R. 11. In both applications, Claimant alleges an onset date of January 31, 2011. *Id.* His claims were denied initially and upon reconsideration. Doc. No. 17 at 1. On July 9, 2013, Claimant filed a request for hearing. R. 114. On February 5, 2015, Claimant attended a hearing before the ALJ. R. 25-37. On March 25, 2015, the ALJ issued an unfavorable decision. R. 8-19. On April 6, 2015, Claimant filed a request for review of the unfavorable decision. R. 6-7. On July 22, 2016, the Appeals Council denied Claimant's request for review. R. 1-4. On August 25, 2016, Claimant filed this appeal. Doc. No. 1.

## II.     STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. The District Court "'may not decide the facts anew, reweigh the

evidence, or substitute [its] judgment for that of the [Commissioner].'" *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

## III.   ANALYSIS

### A.  Dr. Ramirez's Evaluation

On September 23, 2010, Claimant presented to Dr. Ramirez at the request of the Commissioner. Doc. No. 17 at 12. The visit was ordered to aid in the Commissioner's determination of Claimant's May 2010 DIB application. *Id.* On October 2, 2010, Dr. Ramirez completed a psychological evaluation (the "Evaluation") opining on Claimant's mental status. R. 272-75. The Evaluation was completed four months before Claimant's alleged onset date. R.11, 272. The following findings are taken from the Evaluation. Claimant reports that he suffers from glaucoma and has difficulties seeing. R. 272. Claimant's wife helps him exit the shower due to his arthritis. R. 273. Claimant is unable to count change correctly. *Id.* Claimant cannot identify the current month or day. *Id.* Claimant's judgment and insight are fair, but his abstraction abilities are poor. *Id.* Claimant's IQ score is 57, which falls in the extremely low range of intelligence (specifically within the two-tenths percentile). *Id.* Claimant's IQ scores are at or below the second percentile in verbal comprehension, perceptual reasoning, working memory, and processing speed. *Id.* Dr. Ramirez diagnosed Claimant with a mild intellectual disability, glaucoma, hypertension, arthritis, and "some impairments in adaptive functioning."[1] *Id.* Dr. Ramirez diagnosed Claimant with a GAF score of fifty and found that "he is not able to manage funds." R. 274-75.

---

[1] As the Eleventh Circuit has recognized:

> Effective September 3, 2013, the Social Security Administration replaced the term mental retardation with the term intellectual disability as a listed impairment. Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed.Reg. 46499 (Aug. 1, 2013). This change was made because "the term 'mental retardation' has negative connotations," and "has become offensive to many

At the February 5, 2015 hearing, Claimant's prior counsel requested that the ALJ consider the Evaluation, arguing that it provided information as to whether Claimant met any of the listed impairments.[2] R. 27-28. At step two of the sequential evaluation process, the ALJ found that Claimant had the following severe impairments: history of ankle sprain, hypertension, and bipolar disorder. R. 13. At step three, the ALJ cited to the Evaluation, finding that Claimant's impairments (or combination of impairments) are not severe enough to meet any of the listed impairments. R. 14. At step four, the ALJ found that Claimant had the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that [Claimant] has the [RFC] to perform medium work…except he can follow simple instructions and perform simple tasks but requires a scheduled break every [two] hours. [Claimant] can occasionally interact with supervisors, co-workers, and the public but should have few if any [workplace] changes.

R. 15 (emphasis added). Thus, the ALJ found Claimant had an RFC to perform medium work with certain nonexertional limitations, namely that Claimant: 1) can follow simple instructions; 2) can perform simple tasks with breaks every two hours; 3) can occasionally interact with supervisors, co-workers, and the public; and 4) should have few (if any) changes in the workplace. *Id.* The ALJ

---

people." *Id.* at 46499. But this change "d[id] not affect the actual medical definition of the disorder or available programs or services." *Id.* at 49500. We follow the agency's new nomenclature.

*Rodriguez v. Comm'r of Soc. Sec.,* 633 Fed. Appx. 770, 772 n.1 (11th Cir. 2015). Thus, the Court will also follow the agency's new nomenclature.

[2] The Social Security regulations delineate a five-step sequential evaluation process for determining whether a claimant is disabled. *Jones v. Apfel,* 190 F.3d 1224, 1228 (11th Cir. 1999) (citing 20 C.F.R. § 404.1520). The ALJ must determine: 1) whether the claimant has engaged in substantial gainful activity; 2) whether the claimant has a severe impairment; 3) whether the severe impairment meets or equals the severity of one of the listed impairments; 4) whether the claimant has the residual functional capacity ("RFC") to perform his or her past relevant work; and 5) whether (considering the claimant's RFC, age, education, and work experience) the claimant could perform other work within the national economy. *Id.*

then weighed the medical opinions in the record. R. 17. While the ALJ cites to the Evaluation, he does not give it any specific weight. *Id.* (citing R. 272-75).

The ALJ's treatment of the Evaluation presents two separate issues: 1) whether the Evaluation is a medical opinion; and 2) whether the ALJ properly considered the Evaluation. In *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011), the Eleventh Circuit provided a definition of a medical opinion:

> Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.

*Id.* (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)) (emphasis added). Here, the Evaluation contains diagnoses, statements regarding Claimant's functional capacity, and a judgment about Claimant's abilities (or lack thereof) despite his mental limitations. The Evaluation states Claimant's general IQ score falls in the extremely low range of intelligence and falls at or below the second percentile in verbal comprehension, perceptual reasoning, working memory, and processing speed. R. 274. The Evaluation contains diagnoses of mild intellectual disability and "some impairments in adaptive functioning." *Id.* The Evaluation also opines on Claimant's abilities (or lack thereof) despite his mental limitations, namely that Claimant is unable to manage funds. R. 275. Based on the foregoing, the undersigned finds that the Evaluation is a medical opinion under the definition provided in *Winschel*.

The next issue is whether the ALJ properly considered the Evaluation. Claimant argues that the ALJ erred in not weighing the Evaluation. Doc. No. 17 at 6-7. The Commissioner makes two arguments in response: 1) the ALJ does consider and cites to the Evaluation; and 2) the ALJ need not specifically weigh the Evaluation, as it was given four months prior to Claimant's alleged

onset date. *Id.* at 7-8. The undersigned finds that the ALJ did not properly consider the Evaluation because he did not assign any specific weight to it. There are two reasons that the undersigned finds error in the ALJ's actions. First, the Commissioner provides no authority in the Joint Memorandum standing for the proposition that an ALJ need not specifically weigh the Evaluation. *Id.*

Second, the Evaluation is within close proximity to Claimant's alleged onset date and is relevant to Claimant's impairments. It is well established that the claimant bears the burden of producing evidence in support of his or her disability claim. *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(a),(c)). Once a claimant produces such evidence, the Commissioner's regulations require the ALJ to consider "all evidence in [the] case record" when making a disability determination. 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3) (emphasis added). Considering the aforementioned regulations, Courts within the Eleventh Circuit have found pre-onset date evidence to be significant so long as such evidence is: 1) within close proximity to the onset date; and 2) relevant to a claimant's impairments. *See Clowers v. Colvin*, No. 2:14–cv–1380–SLB, 2015 WL 3554664, at *8 (N.D. Ala. Jun. 5, 2015) (finding that a consultative examination taken seven months before a claimant's onset date "had some relevance, albeit not complete relevance, to the time period at issue…"); *Hamlin v. Astrue*, No. 3:07–cv–507–J–TEM, 2008 WL 4371326, at * 4 (M.D. Fla. Sept. 19, 2008) (finding that "the Commissioner's own requirement that ALJs consider all the evidence in the record" obligated the ALJ to consider relevant evidence predating a claimant's alleged onset date); *Simpson v. Colvin*, Civil Action No. 2:14–cv–00946–AKK, 2015 WL 139329, at * 4 (N.D. Ala. Jan. 12, 2015) (finding that an ALJ's failure to consider a medical opinion given before a claimant's onset date was not harmless error).

Here, the Evaluation meets both of the aforementioned requirements. The Evaluation is within close proximity, as it was given four months before Claimant's alleged onset date. R. 11, 272-75. The Evaluation is also relevant, given that the ALJ found Claimant suffers from a severe mental impairment. R. 13. In the Evaluation, Dr. Ramirez diagnosed Claimant with a mild intellectual disability and "some impairments in adaptive functioning." R. 274. The Evaluation also finds Claimant's general IQ score falls in the extremely low range of intelligence (specifically within the two-tenths percentile) and falls at or below the second percentile in verbal comprehension, perceptual reasoning, working memory, and processing speed. *Id.* Finally, Dr. Ramirez found that because of Claimant's mental limitations, he is unable to manage funds. R. 274-75. The aforementioned findings not only provide information about Claimant's impairments, but it also contradict some of the ALJ's findings. *See e.g.* R.14 (finding that Claimant's "mental exams show normal attention and concentration…"); R. 17 (finding that the overall medical evidence shows "clear cognition, memory, normal behavior, normal perception, and normal attention and concentration").

The Court recognizes that the ALJ cited to the Evaluation in his opinion and gave substantial weight to two non-examining physicians who reviewed the Evaluation. R. 14, 16-17, 42, 70. Nevertheless, given the Evaluation's proximity to Claimant's alleged onset date and its relevance to Claimant's mental impairments, the undersigned finds that the ALJ should have specifically weighed the opinion and provided reasons for providing such weight. Without such a statement, the Court cannot determine whether the ALJ's properly considered the Evaluation and whether his decision is based on substantial evidence.

### B.  Claimant's Prior DIB File

As stated above, Claimant received DIB between January 1989 and January 2010. Doc. No. 17 at 10, 11; R. 188. On January 27, 2015, Claimant's prior counsel requested that the ALJ obtain Claimant's prior file. R. 269. Claimant's prior counsel requested the same at the February 5, 2015 hearing. R. 28. In his decision, the ALJ did not mention that Claimant was previously found to be disabled. R. 13-18. Claimant argues that the ALJ failed to fully develop the record because he did not review Claimant's prior DIB file. Doc. No. 17 at 9-11. The Commissioner responds with two arguments: 1) the ALJ is under no duty to review Claimant's prior file; and 2) the record "contains agency documents reflecting his prior claims." *Id.* at 11.

It is well established that the ALJ has a duty to develop a full and fair record. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). The Supreme Court in *Sims v. Apfel*, 530 U.S. 103, 110-11, 120 S.Ct. 2080, 2085, 147 L.Ed.2d 80 (2000), held that "[s]ocial security proceedings are inquisitorial rather than adversarial" and that the ALJ has a duty "to investigate the facts and develop the arguments both for and against granting benefits." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389 (1971)). The ALJ has such an obligation "even if the claimant is represented by counsel, or has waived the right to representation." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (citing *Thorne v. Califano*, 607 F.2d 218, 219 (8th Cir. 1979)). Remand due to the ALJ's failure to develop the record is appropriate when "the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) (internal quotation marks omitted). At a minimum, clear prejudice "requires a showing that the ALJ did not have all of the relevant evidence before him in the record…or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th

Cir. 1985). The burden is on the Claimant to show prejudice. *Jones v. Comm'r of Soc. Sec.*, 497 Fed.Appx. 888, 892 (11th Cir. 2012).[3]

The Court finds that the ALJ should have reviewed Claimant's prior DIB file for two reasons. First, the Commissioner's argument that the record "contains agency documents reflecting his prior claims" (Doc. No. 17 at 11) is misplaced. The Commissioner only cites to one page from a summary noting Claimant's past two applications for DIB. R. 188; Doc. No. 17 at 11. The Commissioner does not cite to any evidence from Claimant's prior DIB file in the record. *Id.*

Second, in *Tominus v. Astrue*, No. 8:07–CV–2108–T–TGW, 2009 WL 35164 at *3 (M.D. Fla. Jan. 6, 2009), the Court found that a claimant's prior file should have been reviewed after Claimant alleged that he suffered from mental illness for most of his life and was previously awarded benefits. *Id.* Here, Claimant has stated that he had received disability benefits "for many years" due to a learning disability. R. 364. Claimant's prior counsel twice made the ALJ aware of Claimant's previous receipt of DIB, and the record shows Claimant previously received DIB for twenty-one years. R. 28, 188, 269. Considering the aforementioned facts along with the fact that: 1) Claimant filed the applications at issue just twenty-two months after his initial DIB payments were terminated; 2) the ALJ found that Claimant suffers from a severe mental impairment; and 3) there is record evidence showing Claimant's mental deficits (such as the Evaluation), the Court finds Claimant's prior file relevant to the ALJ's disability determination. R. 11, 13, 188, 272-75. As discussed above, the undersigned already recommends remand for the ALJ to specifically weigh the Evaluation. On remand, the ALJ must also consider Claimant's prior DIB file.

---

[3] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

IV.     **CONCLUSION**

For the reasons stated above, it is **RECOMMENDED** that the Court:

1. **REVERSE AND REMAND** the Commissioner's final decision for further proceedings pursuant to sentence four of Section 405(g); and

2. Direct the Clerk to award judgment in favor of Claimant and to close the case.

<u>**NOTICE TO PARTIES**</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on March 15, 2017.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy